IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY and THE
SIERRA CLUB,

          Plaintiffs,

    v.                                     CIVIL ACTION NO. 2:15-cv-11150

MINGO LOGAN COAL COMPANY, LLC,

          Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     This is a citizen suit for declaratory and injunctive relief against Defendant Mingo Logan Coal Company ("Mingo Logan") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), at its Mountain Laurel Mine Complex near Sharples, West Virginia.  Plaintiffs allege that Mingo Logan has failed to comply with the terms and conditions of its state certification under Section 401 of the CWA, 33 U.S.C. § 1341.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizens' suit provision).

3.     On March 25 2015, Plaintiffs gave notice of the violations and its intent to file suit to Mingo Logan, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

4.     More than sixty days have passed since notice was served.  EPA and/or WVDEP

have not commenced or diligently prosecuted a civil or criminal action to redress the violations.

5.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the source of the Clean Water Act violations is located in this District.

<u>**PARTIES**</u>

6.      Mingo Logan is a subsidiary of Arch Coal, Inc. and is engaged in the business of mining coal.

7.      Mingo Logan is a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

8.      At all relevant times, Mingo Logan has owned and operated the Mountain Laurel Mine Complex near Sharples, West Virginia, which is regulated by Mining Permit U503197 under the Surface Mining Control and Reclamation Act, WV/NPDES Permit WV1013289 under § 402 of the CWA, and Permit No. 199700093 under § 404 of the CWA.

9.      Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

10.      Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members.  It works for the conservation and wise management of West Virginia's natural resources.

11.      Plaintiff The Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 2,000 members

2

who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is

dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and

promoting the responsible use of the Earth's resources and ecosystems; to educating and

enlisting humanity to protect and restore the quality of the natural and human environment; and

to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass

the exploration, enjoyment and protection of surface waters in West Virginia.

  12. Plaintiffs have members, including but not limited to Cindy Rank and Vivian

Stockman, who use, enjoy, and benefit from the water quality in Seng Camp Creek, Spruce Fork,

and the Little Coal River, and the natural resources associated with those streams.  They would

like to use, enjoy, and recreate in areas downstream from the portion of the stream into which

Mingo Logan's Mountain Laurel Mine Complex has discharged fill material, buried the stream,

and impaired its suitability for aquatic life.  Mingo Logan's failure to mitigate those adverse

effects has increased the risk that the water quality and aquatic habitat in the watershed used by

Plaintiffs' members is less healthy and desirable than it would have been if Mingo Logan had

complied with its certification and mitigation plan.  As a result, the environmental, health,

aesthetic, and recreational interests of these members are adversely affected by Mingo Logan's

violations of the conditions in its § 401 certification.  If Mingo Logan's unlawful conduct ceased,

the harm to the interests of Plaintiffs' members could be redressed.  An injunction would redress

Plaintiffs' members' injuries by preventing and/or deterring future violations of the Mingo

Logan's § 401 certification.

  13. At all relevant times, Plaintiffs were and are "persons" as that term is defined by

the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

14.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, including a permit issued by the Corps pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

15.     Section 404 of the CWA authorizes the U.S. Army Corps of Engineers (the Corps) to issue permits, under certain circumstances, "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." *Id.*, § 1344(a).

16.     Section 401 of the CWA requires that all federal licenses or permits receive a water quality certification from the State. *Id.*, § 1341.

17.     Before issuing the certification, the State must determine that the federal license or permit will comply with the State's water quality standards and other appropriate State requirements. *Id.*, § 1341(a)(1).  The State "shall condition such . . . permit in such manner as may be necessary to insure compliance with applicable water quality requirements." *Id.*, § 1341(a)(2).  These conditions in the certification become conditions to the federal license or permit requiring a Section 401 certification. *Id.,* § 1341(d).

18.     WVDEP is the agency in the State of West Virginia that issues § 401 certifications.

19.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

20.     Section 505(f)(5) of the CWA, 33 U.S.C. § 1365(f)(5), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, a certification under

Section 401 of the CWA, 33 U.S.C. § 1341.

21.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA.

22.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

23.     On October 8, 2004, WVDEP issued a Section 401 certification to Mingo Logan for its stream filling activities associated with its underground coal mine and preparation plant at its Mountain Laurel Mine Complex.  Those activities were authorized by an individual § 404 Permit No. 199700093 that was noticed by the Corps to the public on July 20, 2004 and later issued by the Corps.  The activities included the temporary culverting of 5,475 linear feet of Seng Camp Creek and one of its tributaries, resulting in impacts to 3.36 acres of waters of the United States.

24.     Seng Camp Creek is a tributary of Spruce Fork, which flows into the Little Coal River.

25.     WVDEP's October 8, 2004 certification was "granted subject to compliance with the conditions contained in the Compensation/Mitigation Agreement signed August 13, 2004."

26.     The August 13, 2004 Agreement proposed in-kind compensation for the adverse impacts of the project on 3.36 acres of Seng Camp Creek and its tributary.  It stated that "at a minimum the stream restoration, enhancement or other water quality improvement project or projects will restore, construct, enhance or improve 6.72 acres of stream."

27.     The August 13, 2004 Agreement provided that Mingo Logan would submit a project plan for WVDEP's approval and complete this project not later than five years after

WVDEP issued WV/NPDES Permit No. WV1013289, Modification No. 8.  WVDEP issued that permit on August 30, 2004, so the required completion date was August 30, 2009.

28.     In August 2004, WVDEP approved Mingo Logan's Final Compensatory Mitigation Plan which stated that during the mining and operations phase of its project, Mingo Logan would construct two clean water diversion ditches (CWD #1 and #2) along the south boundary of the mining complex that would drain to Seng Camp Creek at two different locations, with a total length of 4,660 feet (1.52 acres).  The created channels were to include in-stream structures and a surrounding riparian zone consisting of trees and shrubs.  The Plan promised to perform annual habitat assessments for these ditches and to achieve a habitat assessement value (HAV) of 150 for each one.

29.     Upon information and belief, the August 2004 Final Compensatory Mitigation Plan is the only project plan submitted by Mingo Logan and approved by WVDEP in satisfaction of the requirement in the August 13, 2004 Compensation/Mitigation Agreement.

30.     During the mining and operations phase of the Final Compensatory Mitigation Plan project, Mingo Logan also proposed to enhance approximately 1,700 linear feet (0.7805 acres) of jurisdictional waters in Seng Camp Creek, upstream from the proposed 15-feet diameter culvert.

31.     Mingo Logan has submitted annual status reports for this project to document whether its mitigation plan has been carried out and has been successful.  Those reports state that the two diversion ditches were "predominantly dry" in 2009 and in every year from 2011 through 2014.  The 2014 Report explains the reason for this:

> Flows through the ditches continually lose water through cracks in the substrate to the 15 foot culvert below. This loss of water prevents the formation of flows which would form a channel feature. It is doubtful that the temporary mitigation in the clear water ditches as they currently exist will ever be able to meet the success criteria proposed in the approved Compensatory Mitigation Plan (CMP).

32.     The 2009 report stated that "[t]he success standards set forth in the mitigation plan called for both clear water ditches to have a total score of 150 out of 200 at the end of the five year monitoring period."  A table in the 2014 report shows that the ditches have never achieved that score from 2009 to the present.  The HAV scores are summarized in the table below:

| Year | CWD #1 | CWD #2 |
|------|--------|--------|
| 2006 | 59 | 57 |
| 2007 | 86 | 80 |
| 2008 | 73 | 66 |
| 2009 | 71 | 62 |
| 2010 | No report | No report |
| 2011 | 74 | 73 |
| 2012 | 68 | 62 |
| 2013 | 62 | 63 |
| 2014 | 60 | 63 |

33.     Mingo Logan's 2014 annual report admitted that these scores do not meet the success criteria in the approved mitigation plan.  Thus, more than five years after the date for the completion of its mitigation project involving these two ditches, Mingo Logan has failed to create channels with any flowing water or with adequate habitat to replace the natural stream that it has adversely affected during its mining project.

34.     Mingo Logan has also violated the conditions of the certification in at least three other ways:

a.  First, the Compensatory Mitigation Plan requires the establishment of a minimum 25-foot riparian buffer adjacent to the two ditches using native shrub and tree species, with a 66% success rate for revegetation.  Pictures attached to the reports show that this buffer has not been established.  The 2014 report found "limited signs of survival or growth between 2011 and 2014."

b.  Second, the Compensatory Mitigation Plan requires the placement of cross-vane structures, riffle runs, rootwads, and bank protection measures in the two ditches.  These features have not been installed.  The 2014 Report states that "[i]n-stream structures have not been installed in either channel due to the lack of a continuous bankfull channel."

c.  Third, the Compensatory Mitigation Plan proposed to enhance approximately 1,700 linear feet (0.7805 acres) of jurisdictional waters in Seng Camp Creek upstream from the proposed 15 foot diameter culvert.  The plan stated that "[d]uring site development and utilization, the jurisdictional waters in main Seng Camp Creek upstream from the proposed impacts will be enhanced." Mingo Logan's 2009, 2011, 2012, 2013, and 2014 Reports state that this work had not even been started in 2009, and has still not been completed.

## CLAIM FOR RELIEF

35.  Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 33 above.

36.  Seng Creek is a water of the United States within the meaning of 33 U.S.C. § 1362(7).

37.  The conditions in Mingo Logan's § 401 certification are "effluent standards or limitations" for purposes of Sections 505(a)(1) and 505(f)(5) of the Clean Water Act.  33 U.S.C. §§ 1365(a)(1), 1365(f)(5).

38.  Since at least September 1, 2009, Mingo Logan has violated the conditions in its October 8, 2004 § 401 certification for its Mountain Laurel Mine Complex by failing to satisfy the requirements in its Compensatory Mitigation Plan and therefore in its Compensation/Mitigation Agreement.

39.     Based on Mingo Logan's violations of these conditions, and its failure to take corrective actions to address those violations, Plaintiffs believe and allege that Mingo Logan is in continuing and/or intermittent violation of its § 401 certification and the CWA.

40.     Mingo Logan is subject to an injunction under the CWA ordering it to comply with its certification conditions.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1.      Declaring that Mingo Logan has violated and is in continuing violation of the conditions in its § 401 certification under the CWA;

2.      Enjoining Mingo Logan from operating its facilities at its Mountain Laurel Mine Complex in such a manner as will result in further violations of the conditions in its § 401 certification;

3.      Ordering Mingo Logan to immediately comply with the conditions in its § 401 certification;

4.      Ordering Mingo Logan to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

5.      Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

6.      Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/** J. Michael Becher
J. MICHAEL BECHER (W.Va. Bar No. 10588)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 382-4798

Counsel for Plaintiffs